## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSE DE JESUS GONZALEZ CORTES,   ) | |
|                                     ) | |
|     Petitioner,              ) | |
|                                       ) | |
| v.                               ) | Case No. CIV-25-1176-SLP |
|                                       ) | |
| RUSSELL HOLT, et al.,        ) | |
|                                       ) | |
|     Respondents.          ) | |

## O R D E R

Petitioner Jose de Jesus Gonzalez Cortes, a Mexican citizen proceeding with counsel, filed a Petition [Doc. No. 1] seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE"). On November 5, 2025, United States Magistrate Judge Amanda L. Maxfield entered a Report and Recommendation [Doc. No. 11] (R&R) recommending the Petition be granted in part. Specifically, the R&R recommends that the Court order Respondents to provide Petitioner with an individualized bond hearing under 8 U.S.C. § 1226(a) within seven days or otherwise release Petitioner if he has not received a lawful bond hearing within that period. *Id.* at 27. Further, the R&R recommends the Court decline to decide the merits of Petitioner's due process claim on the basis that he may renew his claim if Respondents do not provide him with a bond hearing or release him within the ordered time. *Id.* at 25.

Respondents filed an objection to the R&R, [Doc. No. 12], to which Petitioner responded [Doc. No. 14]. Thus, the Court must make a de novo determination of those

aspects of the R&R to which Respondents object, and the Court may accept, reject, or modify the recommended decision, in whole or in part.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  Review of all other issues addressed by the Magistrate Judge are waived. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).   For the reasons stated below, the Court ADOPTS the R&R and GRANTS IN PART the Petition.

## I.     Background

Petitioner entered the United States around 2001 without being inspected or admitted and currently resides in Tecumseh, Oklahoma.  [Doc. No. 1] ¶¶ 42–43; [Doc. No. 8] at 12.  In September 2013, Immigration and Customs Enforcement ("ICE") detained Petitioner and initiated removal proceedings on September 11, 2013, alleging that he was present in the United States without being admitted or paroled.  [Doc. No. 1] at 11; [Doc. No. 8] at 12–13; [Doc. No. 8-1] at 1.  Petitioner was released the same day on a $5,000 bond pursuant to § 236 of the Immigration and Nationality Act ("INA").  [Doc. No. 8-2].

On January 23, 2014, ICE cancelled Petitioner's bond and returned him to custody. [Doc. No. 8] at 13; [Doc. No. 8-3].  On February 24, 2014, following Petitioner's request for a custody redetermination under 8 C.F.R. § 236.1(c), an Immigration Judge ordered Petitioner released on a $10,000 bond.  [Doc. No. 1] at 11; [Doc. No. 1-2]; [Doc. No. 8] at 13; [Doc. No. 8-4].

On August 8, 2025, ICE apprehended Petitioner in Oklahoma City, Oklahoma. [Doc. No. 1] at 11; [Doc. No. 8] at 13.  Since his arrest, Petitioner has remained in custody without a bond hearing.  On October 8, 2025, while detained at the Cimarron Correctional

Facility in the Western District of Oklahoma, Petitioner filed his Petition, asserting that his continued detention violates the INA and his Fifth Amendment due process rights.

## II.    Discussion

Respondents assert two objections to the R&R's findings: "(1) the R&R misapplied the jurisdiction stripping provision of 8 U.S.C. § 1252(g); and (2) the R&R failed to apply the plain language of § 1225(b)(2)(A)."  Obj. [Doc. No. 12] at 1.  Because Respondents do not object to the Magistrate Judge's jurisdictional analysis and conclusion regarding §§ 1252(a)(5) and 1252(b)(9), *see* R&R [Doc. No. 11] at 6–8, the Court does not address those sections herein, and any objection to those conclusions are waived.  *See Moore*, 950 F.2d at 659; *see also 2121 E. 30th St.*, 73 F.3d at 1060.

### A. Jurisdiction

Respondents first challenge the Court's jurisdiction over this matter, arguing that the R&R misapplies 8 U.S.C. § 1252(g).  Specifically, they argue that § 1252(g) bars this Court from considering "any cause or claim by or on behalf of any alien arising from the decision or action by [DHS] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  Obj. [Doc. No. 12] at 2 (emphasis removed).

Respondents agree with the Magistrate Judge that § 1252(g) must be read narrowly. *Id.* (citing R&R [Doc. No. 11] at 8).  Consistent with that limitation, the R&R concludes that § 1252(g) does not bar jurisdiction because Petitioner does not challenge the commencement or adjudication of removal proceedings, nor the execution of any removal order.  Rather, he raises "the narrow legal questions of whether [his] detention under 8

3

U.S.C. § 1225 violates the INA and whether he is entitled to a bond hearing under § 1226's discretionary detention framework." R&R [Doc. No. 11] at 9 (citing *Mendoza Gutierrez v. Baltasar*, No. 25-CV-2720-RMR, 2025 WL 2962908, at *3 (D. Colo. Oct. 17, 2025)).

Respondents object to this analysis, arguing that the decision to detain Petitioner is directly connected to a decision to commence proceedings. Obj. [Doc. No. 12] at 2. In support, Respondents rely on an unpublished Tenth Circuit opinion. *See Tsering v. U.S. Immigr. & Customs Enf't*, 403 F. Appx 339, 343 (10th Cir. 2010) ("We agree with the Fifth Circuit that claims that clearly are included within the definition of arising from are those claims connected directly and immediately with a decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."). The Court finds that reliance misplaced.

In *Tsering*, the petitioner alleged that ICE violated his due process rights by removing him to Nepal using travel documents that falsely identified him as a Nepalese citizen when he was, in fact, Tibetan. *Id.* at 343. The Tenth Circuit held that § 1252(g) barred jurisdiction because the challenged conduct "directly and immediately connected to the execution of his removal order" as the false travel documents were the mechanism by which removal was effectuated. *Id.* In reaching that conclusion, the court relied in part on the Fifth Circuit's decision in *Foster v. Townsley*, which interpreted § 1252(g) to extend beyond discretionary actions to include claims "arising from" the three enumerated actions identified in the statute. *Id.* (citing *Foster v. Townsley*, 243 F.3d 210, 214 (5th Cir. 2001)).

Subsequent authority, however, has clarified and narrowed that interpretation. After *Foster*, the Fifth Circuit clarified that § 1252(g) does not bar constitutional challenges to

the statutory scheme itself, *see Flores-Ledezma v. Gonzales*, 415 F.3d 375, 380 (5th Cir. 2005), and the Supreme Court later emphasized that § 1252(g) must be read narrowly and applies only to the three discrete actions expressly listed in the statute.[1]  *See Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("AADC") ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.").

Here, the Court agrees with the R&R's conclusion that Petitioner's claim that Respondents are detaining him without a bond hearing in violation of the INA does not divest the Court of jurisdiction.  Such a claim does not "arise from" and is not directly connected to the commencement of removal proceedings, the adjudication of removability, or the execution of any removal order.  Rather, Petitioner challenges the legality of his continued detention under the statutory framework governing custody and bond determinations.  Accordingly, *Tsering*, which involved a claim directly tethered to the physical execution of a removal order, does not control the jurisdictional analysis in this

---

[1] Several district courts have likewise concluded that *Tsering* is inapposite where, as here, a petitioner challenges the legality of continued detention without a bond hearing. *See e.g.*, *Medina-Hererra v. Noem, et al.*, No. CIV-25-1203-J, 2025 WL 3460946, at *2 (W.D. Okla. Dec. 2, 2025); *Alonso v. Tindall*, No. 3:25-CV-652-DJH, 2025 WL 3083920, at *2 (W.D. Ky. Nov. 4, 2025) (rejecting government's proposition that detainment decision arose from commencement of removal proceedings); *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 378 (D. Mass.), *reconsideration denied sub nom. D.V.D v. U.S. Dep't of Homeland Sec.*, 786 F. Supp. 3d 223 (D. Mass. 2025) ("Insofar as *Tsering v. U.S. Immigr. & Customs Enf't*, 403 F. App'x. 339, 342–43 (10th Cir. 2010), an unpublished decision, relies on *Foster* and its interpretation of *AADC*, this Court views it as an outlier among the circuit courts and will not follow its reasoning.").

case, and the Court is not barred by § 1252(g) from reviewing Petitioner's claims.[2]  *See, e.g., Diaz v. Holt*, No. CIV-25-1179-J, 2025 WL 3296310, at *1 (W.D. Okla. Nov. 26, 2025) ("Because Petitioner does not challenge Respondents' decision to commence or adjudicate proceedings or execute removal orders, the Court concludes that § 1252(g) does not jurisdictionally bar his Petition.").

## B.  Section 1226(a) Applies

Respondents next object to the Magistrate Judge's statutory analysis concluding that 8 U.S.C. § 1226(a) governs Petitioner's detention rather than § 1225(b)(2)(a).  *See* [Doc. No. 11] at 26; *See* [Doc. No. 12] at 5-7.  Specifically, Respondents re-urge many of the same arguments considered by the Magistrate Judge, including that Petitioner is an "applicant for admission" and "seeking admission" within the statute, that using the R&R's interpretation of § 1225 is inconsistent with the purpose of the IIRIRA, that the Laken Riley

---

[2] Respondents cite to a single decision that held § 1252(g) bars a district court's jurisdiction to consider a petitioner's challenge to detention.  *See Acxel S.Q.D.C. v. Bondi*, 2025 WL 2617973, at *3 (D. Minn. Sep. 9, 2025).  The *S.Q.D.C.* Court relied on *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016).  Despite acknowledging that *Alvarez* is factually distinguishable, Respondents argue the Court should nonetheless follow *Alvarez* because it "applied § 1252(g) to the discretionary acts of electing to bring charges under particular provisions rather than others—like the issues in this case."  Obj. [Doc. No. 12] at 5.  Upon review, the Court agrees with the R&R that *S.Q.D.C.* "appears to represent an extreme minority position, both in its own district and nationally."  *Gonzalez Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *2 (W.D. Tex. Oct. 21, 2025); *see also Fuentes v. Olson*, No. 25-CV-4456 (LMP/ECW), 2025 WL 3524455, at *3 (D. Minn. Dec. 9, 2025) ("Respectfully, *S.Q.D.C.* is an outlier in this District and is unpersuasive because it relies on an unduly broad interpretation of Section 1252(g) that the Supreme Court rejected in *AADC*."); *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *5 n.3 (D. Minn. Oct. 1, 2025) ("respectfully disagree[ing] with the conclusion reached by the Court in S.Q.D.C."); *Medina-Hererra*, 2025 WL 3460946, at *2 (declining to follow *S.Q.D.C.*).  Petitioner's claims challenge his detention without a bond and do not challenge a discretionary decision to commence proceedings, adjudicate his case, or execute a removal order.

Act does not render § 1225(b)(2)(A) superfluous, and that the R&R's statutory analysis

conflicts with the discretionary practices of U.S. Immigration and Customs Enforcement.

### 1.  Petitioner does not fall within the plain language of § 1225(b)(2)

When interpreting statutes, the Court must "begin with the language of the statute

itself." *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 613 (10th Cir.

2018) (citing *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2014)).  However, ambiguity is not

determined by examining provisions in isolation.  *Rodriguez v. Noem*, No. 1:25-CV-1196,

2025 WL 3022212, at *5 (W.D. Mich. Oct. 29, 2025).  "The words of a statute must be

read in their context and with a view to their place in the overall statutory scheme." *Roberts

v. Sea-Land Servs., Inc*., 566 U.S. 93, 101 (2012).  "It is 'a cardinal principle of statutory

construction' that a 'statute ought, upon the whole, to be so construed that, if it can be

prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW

Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174

(2001)).  "[E]very clause and word . . . should have meaning." *United States, ex rel.

Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (internal quotation marks

and citation omitted).  "This includes titles and section headings." *Ramirez v. Lewis, et al.*,

No. 4:25-CV-143-RGJ, 2025 WL 3553676, at *5 (W.D. Ky. Dec. 11, 2025) (citing *Dubin

v. United States*, 599 U.S. 110, 120–21 (2023)).

According to the plain language of the statute, § 1225(b)(2)(A) applies "in the case

of an alien who is an *applicant for admission*, if the examining officer determines that an

alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien

shall be detained for a proceeding under section 1229a of this title." U.S.C. § 1225(b)(2)(a)

(emphasis added). Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."

Respondents object to the Magistrate Judge's interpretation of the terms "applicant for admission" and "seeking admission" within the statute. *See* [Doc. No. 12] at 5-7. While Respondents' Objection makes passing reference to "applicant for admission," their argument is undeveloped and conclusory, arguing merely that because he is present in the United States without admission, he is "plainly an 'applicant for admission.'" *Id.* at 6. However, even assuming, without deciding, that Respondents are correct that Petitioner is an "applicant for admission," they fail to establish that Petitioner is "seeking admission" under § 1225(b)(2). *See, e.g., Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *5 (D. Colo. Oct. 24, 2025) ("Noncitizens who are just 'present' in the country may technically be considered an 'applicant for admission' because they are 'a noncitizen present in the United States who has not been admitted,' but this is not interchangeable with a determination that a noncitizen is 'seeking admission'") (cleaned up and citations omitted); *Patel v. O'Neil et al.,* No. 3:25-CV-2185, 2025 WL 3516865, at *5 (M.D. Pa. Dec. 8, 2025) ("Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A) is unlawful under the INA because the plain language of this provision and the statutory framework of the INA compels a finding that § 1225(b)(2)(A) applies only to noncitizens who are affirmatively seeking admission to the United States, not noncitizens like Petitioner who have resided in the United States for years.").

Respondents maintain that "seeking admission" is "simply another way of referring to aliens who are applicants for admission." Obj. [Doc. No. 12] at 6 (quoting *Cirrus Rojas*

*v. Olson*, et al., No. 25-cv-1437-BHL, 2025 WL 3033967, at *8 (E.D. Wisc. Oct. 30, 2025). However, adopting Respondents' position makes the respective terms "redundant and courts should avoid statutory interpretations which 'make any part [of the statute] superfluous." *Medina-Herrera*, 2025 WL 3460946, at *3 (citing *Fuller v. Norton*, 86 F.3d 1016, 1024 (10th Cir. 1996); *see also Patel*, 2025 WL 3516865, at *5 ("If 'an applicant seeking admission' is the same as 'an applicant for admission,' then 'seeking admission' is surplusage.").

Further, adopting Respondents' interpretation would misconstrue, if not wholly ignore, the word "seeking" in the phrase "seeking admission." Rather, the Court agrees with the near-universal holdings of federal courts around the country that "seeking admission" requires something more than merely residing in the country. *See Hernandez*, 2025 WL 2996643, at *5 ("For a noncitizen to be deemed 'seeking admission' they must currently be taking active steps or some kind of present-tense action to seek lawful entry into the U.S."); *see also Issahaku v. Olson*, No. CV 25-180-DLB, 2025 WL 3539290, at *4 (E.D. Ky. Dec. 10, 2025) ("The use of the present progressive term 'seeking' 'implies action.'") (gathering cases); *Echevarria v. Bondi*, No. CV-25-3252, 2025 WL 2821282, at *6 (D. Ariz. Oct. 3, 2025) ("The word 'seeking' is the present participle of the verb 'seek.' It thus has a temporal element—Petitioner must have been in the process of seeking admission at the time of the inspection.") (cleaned up and citations omitted).

Indeed, the first Court of Appeals decision to weigh in preliminarily on these issues has tentatively rejected Respondents' argument with respect to Section 1225(b)(2):

> [T]he mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."

*Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (emphasis in original, quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).

In analyzing the statutory framework, the Magistrate Judge looked to § 1225's title as well as the subsections' headings. R&R, [Doc. No. 11] at 14-15. Respondents object to this portion of the R&R, arguing that the R&R's focus on the phrase "arriving aliens" renders the word "arriving" in subsection (b)(1) superfluous "if all of § 1225 only applies to 'arriving aliens.'" Obj. [Doc. No. 12] at 8. In support, Respondents point to a single non-controlling district court decision. *Id.* (citing *Sandoval v. Acuna*, No. 6:25-CV-1467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025). In *Sandoval*, the court held that the petitioner was properly detained under § 1225 because "any alien physically present in the United States who has not been admitted is an 'applicant for admission' regardless of how long they have been in the country." However, *Sandoval* is one of only a handful of cases that have adopted Respondents' position, and numerous courts have since declined to follow its reasoning, in part, because the *Sandoval* opinion "did not analyze the title of § 1225, which intentionally refers to 'arriving' aliens, the overall scheme of § 1225, or the implementing regulations . . . [and] also fails to address the significance of the phrase 'seeking admission' in the relevant statute." *Villa v. Normand*, No. 5:25-CV-100, 2025 WL 3188406, at *6 (S.D. Ga. Nov. 14, 2025); *see also Edahi v. Lewis, et al.,* No. 4:25-CV-

129-RGJ, 2025 WL 3466682, at *9 (W.D. Ky. Nov. 27, 2025) (distinguishing *Sandoval*); *Ramirez*, 2025 WL 3553676, at *9 (same); *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861, at *10 (C.D. Cal. Nov. 20, 2025) (same).

Thus, upon de novo review, the Court agrees with the well-reasoned and thorough analysis of the R&R that § 1225(b)(2) does not govern Petitioner's detention.  Further, this holding is consistent with the majority of courts who have examined this issue, similarly finding that a noncitizen who has been present in the country for multiple years without obtaining any form of citizenship is not "seeking admission" under § 1225(b)(2)(a).  *See, e.g.*, *Urbina Garcia v. Holt*, No. CIV-25-1225-J, 2025 WL 3516071, at *4 (W.D. Okla. Dec. 8, 2025); *Colin v. Holt*, No. CIV-25-1189-D, 2025 WL 3645176 (W.D. Okla. Dec. 16, 2025). This construction is also consistent with the Supreme Court's discussion of § 1225 and § 1226 in *Jennings*.  *See Jennings*, 583 U.S. at 289 ("In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).") (emphasis added).

The mere presence of Petitioner in the country does not mean he is "seeking admission."  Petitioner was not at a port of entry awaiting admission into the United States when he was detained.  Over twenty years ago, Petitioner entered the United States without undergoing an examination or inspection by an immigration officer at the time of entry. He remained in the United States during that period.  Accordingly, the Court does not find that Petitioner's circumstances fall under the plain language of §1225(b)(2).

### 2.   Legislative History and Past Practice

Respondents object that this interpretation of § 1225 undermines and "effectively repeals" the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).  *See* [Doc. No. 12] at 9-11.  Respondents note the IIRIRA was enacted to resolve an "anomaly" where "immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Id.* at 9 (citations omitted).  While Respondents cite to two decisions outside of the Tenth Circuit supporting their view of a conflict with the IIRIRA, the Court finds the majority position persuasive.[3]

IIRIRA did not serve as a complete replacement of the pre-IIRIRA immigration scheme.  As noted by the House of Representatives' Report relating to the changes, "[§ 1226(a)] restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. REP. No. 104-469, at 229.  While Congress sought to resolve a quagmire within the previous statutory framework, such a fix was not "intended to entirely up-end the existing detention regime by subjecting all inadmissible noncitizens to mandatory detention." *E.g.*, *Urbina Garcia*, 2025 WL 3460946, at *4 (quoting *Hernandez*,

---

[3] Respondents primarily rely on two out-of-circuit opinions for their position.  *See Chavez v. Noem*, No. 3:25-cv-02323-CAB, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025); *Sandoval*, 2025 WL 3048926, at *6, n. 7.  Numerous district courts have declined to follow and/or expressly rejected such a position.  *See, e.g.*, *Villa*, 2025 WL 3188406, at *6-7; *Delgado Avila v. Crowley*, No. 2:25-cv-00533-MPD-MJD, at *3 (S. D. Ind. Nov. 13, 2025); *Alvarez Ortiz v. Freden*, No. 25-cv-960-LJV, 2025 WL 3085032, at *7, n. 7 (W.D.N.Y. Nov. 4, 2025); *Orellana v. Noem*, No. 4:25-cv-112-RGJ, at *3-4 (W.D. Ky. Oct. 27, 2025).

2025 WL 2996643, at *7).  As such, the Court finds that the majority view's narrow interpretation of § 1225(b)(2) does not run afoul of the IIRIRA.

The Magistrate Judge also found support for her conclusions with the addition of the Laken Riley Act, signed into law in January 2025.  The Laken Riley Act, which was incorporated into § 1226(c), provides that noncitizens who have been charged with, convicted of, or admitted to committing various listed crimes, are subject to mandatory detention.  8 U.S.C. § 1226(c).  Thus, the R&R found that the Laken Riley Act's addition of § 1226(c)(1)(E) would render the Respondents' interpretation of § 1225(b)(2) superfluous.  [Doc. No. 11] at 21.

Respondents object to this conclusion on the basis that § 1226(c)(1)(E) only applies to a narrow class of individuals and their interpretation of § 1225(b)(2) does not render the Laken Riley Act duplicative.  Obj. [Doc. No. 12] at 12.  Respondents' arguments are unpersuasive.  Section 1226(c)(1)(E) mandates the detention of aliens who are inadmissible under "paragraphs (6)(A), (6)(C), or (7) of [8 U.S.C. 1182(a)] and are either charged with, arrested, or convicted of listed crimes."  § 1226(c)(1)(E).  Section 1182(a)(6)(A) refers to "[a]n alien present in the United States without being admitted or paroled . . . ." 8 U.S.C. 1182(a)(6)(A).  Respondents' interpretation of § 1225 would result in the mandatory detention of any individual who is an "alien present in the United States who has not been admitted" and they could not prove they are "clearly and beyond a doubt entitled to be admitted."  Section 1226(c)(1)(E) as amended would essentially be rendered a nullity if the alien would already be subject to mandatory detention under § 1225 as argued by Respondents.  *See*, *e.g.*, *Alvarez Puga v. Assistant Field Off. Dir., Krome N. Serv.*

*Processing Ctr.*, No. 25-23535-CIV, 2025 WL 2938369, at *5 (S.D. Fla. Oct. 15, 2025); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025).  The Court agrees with the Magistrate Judge that the enactment of the Laken Riley Act lends further support for the application of § 1226 in these circumstances.

Lastly, while Respondents claim that their decision to use § 1225(b)(2) is discretionary, *see* [Doc. No. 12] at 11, the Court agrees with the Magistrate Judge that Respondents ignore that such a decision conflicts with nearly thirty years of past practices.  *See*, *e.g.*, *Hernandez*, 2025 WL 2996643, at *7 ("The Court joins the many other courts nationwide who have declined to accept Respondents' novel new interpretation of decades-old law."); *Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) ("As almost every district court to consider this issue has concluded, 'the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades' support finding that § 1226 applies to these circumstances.") (citations omitted).  Accordingly, the Court is persuaded by the reasoning in the large majority of cases "reject[ing] the notion that § 1225(b) applies to all . . . individuals," never lawfully admitted but present in the United States.  *Esperanza v. Francis*, No. 25-CV-8727, 2025 WL 3513983, at *6 (S.D.N.Y. Dec. 8, 2025).  Petitioner's detention is not governed by § 1225(b)(2).

### 3.  Application of § 1226(a)

Because § 1225(b)(2) is inapplicable, the Magistrate Judge concluded that § 1226(a) governs Petitioner's detention.  The difference is critical: "if detained under Section 1225(b)(2)(A), the noncitizen must remain in custody for the duration of their removal

proceedings, but if detained under Section 1226, the noncitizen is entitled to a bond hearing before an [immigration judge]." *Ramirez*, 2025 WL 3553676, at *4.

This holding is consistent with the "overwhelming majority of [district] courts [that] have concluded that § 1226(a) is the appropriate statutory framework." *Brito Hidalgo v. Raycraft*, No. 25-CV-13588, 2025 WL 3473360, at *3 (E.D. Mich. Dec. 3, 2025) (gathering cases); *see* also *Perez v. Lyons*, No. 25-17186, 2025 WL 3238540, at *2 (D.N.J. Nov. 19, 2025) ("The vast majority of courts confronting this precise issue have rejected respondents' interpretation . . . as contradictory to the plain text of § 1225.") (collecting cases); *Demirel v. Fed. Det. Ctr. Philadelphia*, No. 25-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025) ("[O]f the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here."). Respondents do not challenge Petitioner's entitlement to a bond hearing if Petitioner falls under § 1226(a). Resp. [Doc. No. 8] at 7; *see also Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."). As such, Petitioner is entitled to a prompt bond hearing before an immigration judge pursuant to § 1226(a). *See Orellana v. Noem*, No. 4:25-CV-112-RGJ, 2025 WL 3006763, at *6 (W.D. Ky. Oct. 27, 2025) (ordering a "renewed bond hearing" under § 1226 where petitioner had previously received a bond hearing during a prior detention under § 1226).

Further, the Court agrees with the Magistrate Judge that Petitioner's due process claim is premature. The Court declines to decide the merits of such claim and Petitioner may renew such a claim if he is not provided with a bond hearing or released within seven

days of this Order.  *See, e.g., Pizarro Reyes*, 2025 WL 2609425, at *8 ("The Court will decline to decide the merits of [petitioner's] due process claim given that the Court will grant the relief he seeks based on its interpretation of the applicability of § 1226(a).").

### III.    Conclusion

IT IS THEREFORE ORDERED that the R&R [Doc. No. 11] is ADOPTED in its entirety and the Petition for Writ of Habeas Corpus [Doc. No. 1] is GRANTED IN PART as follows:

1.  Respondents are ORDERED to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven (7) days of the date of this Order, or otherwise release Petitioner if he has not received a lawful bond hearing within that period.

2.  Count II is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Respondents shall certify their compliance with this Order by filing a status report within ten (10) days of this Order.  The status report shall detail if and when Petitioner's bond hearing occurred.

A separate judgment shall be entered.

IT IS SO ORDERED this 20th day of January, 2026.


_____
**SCOTT L. PALK**
**UNITED STATES DISTRICT JUDGE**

16